*(Circuit Court of Cook County. In Chancery.)*

## Minnie C. Jensen

vs.

## Paul C. Jensen.

(April 25, 1899.)

1. ATTORNEYS—CONDUCT OF. The practice of attorneys soliciting cases on contingent fees condemned.

2. DIVORCE—SETTING ASIDE DECREE OF—PROCURING ABSENCE OF DEFENDANT. Where a party obtains a decree or judgment in the absence of the opposite party, who has been led to believe that his case was not to be heard at the particular time, the court will set such judgment or decree aside where the case was heard in such party's absence.

3. DECREE OF DIVORCE—SETTING ASIDE WHERE DEFENDANT GUILTY OF ADULTERY. Where a decree of divorce has been awarded, the court will not set the same aside on the petition of the defendant, where such defendant has been guilty of adultery, as, if a new trial were ordered, the decree would be the same.

4. SAME—WHEN SET ASIDE—MUST SHOW GROUND OF DEFENSE. A court will not set aside a decree of divorce on the petition of the defendant unless a reasonable ground of defense is shown.

5. SAME—ADULTERY OF DEFENDANT. Where a defendant who is seeking to set aside a decree of divorce is charged with adultery, the court should give such defendant an opportunity to be heard where there is a reasonable doubt about the matter.

6. ALIMONY—HOW AFFECTED BY ADULTERY. Where a defendant seeking to set aside a divorce decree is charged with adultery and the illicit relation is apparently continued, the court will not allow alimony.

Bill of review to set aside decree of divorce. Gen. No. 185,836. Heard before Judge Murray F. Tuley.

For statement of facts see opinion.

*F. A. Willoughby, F. S. Murphy* and *John W. Bantz,* for complainant.

*John A. Murphy, Jr.* and *Meek, Meek, Cochran & Munsell,* for defendant.

TULEY, J. :—

I was in hopes that I was through with this case. As Justice O'Malley used to observe, "it is the worst case that ever came up them stairs" without any exception.

Suit was commenced in this court by Dr. Paul C. Jensen to secure a divorce from his wife, Minnie, on the ground of adultery. After occupying the attention of the court a number of days with application for temporary alimony, the case was got to an issue and was put upon the regular trial docket. It was reached in due course of business. When reached, the defendant was not present nor was her solicitor. The evidence was *ex parte* and a decree rendered. The defendant, some time afterwards, commenced a proceeding for a bill of review of this decree; publication notice, I believe, was obtained upon the doctor, and Judge Smith entered a decree by default setting aside the divorce decree. Answer was filed under the provisions of the statute allowing an answer to be filed where there is no personal service and the issues as made up are now brought before me for hearing. ·

This case is a very singular one in many respects. I will not attempt to analyze the evidence, it is not necessary; sufficient to say, that the evidence shows that the husband here is a very weak man; in fact these contracts that were read in evidence, by one of which it appears that three days after his marriage a man by the name of St. John, whom the husband regarded as a former lover of his wife, and so testified in substance, appears at their home, the home of the husband and wife in this city, and a contract the like of which never was seen in a court of justice was drawn up and entered into by which St. John and the husband agreed to support this woman by her maiden name, to contribute $10 a week towards her support, each pledging himself to keep away from the woman, and if either one failed to make good her support, I believe the substance of the contract is, failing to pay his $10, why, the other was to have free lance in regard to this woman. A husband who could enter into such a contract and also into the contract afterwards apparently made between him and his wife, by which he agreed to surrender about all that he was worth upon her obtaining a collusive divorce from him, shows that he is a very weak man with not enough manhood in him to obtain the respect of any woman. The wife is either a very designing woman, an adventuress,

making mankind generally her victims, or else she is the opposite thereof, an honest woman, seeking to make her living, the victim of poverty and adverse circumstances; a prey to designing men, who are always ready to profit by and despoil such women of their means and of their character. Now, which she is I do not know. To believe the evidence adduced on the part of the husband, she is an adventuress and nothing else; if you believe the evidence adduced by her, she is at least entitled to have that question tried, and if her evidence is true, she is more the victim of poverty and adverse surroundings and unprincipled men than an adventuress.

The case has been a development to me, a development of professional life. I recollect once to have seen a play called ''High Life Below Stairs.'' I think that so far as the legal profession is concerned, this case is a case of professional life below stairs. It leads to arrests and counter-arrests on the part of the solicitors, charges of fraud, unprofessional conduct on both sides are alleged, and it develops a state of professional life that hitherto, I am happy to say, I have been almost unacquainted with.

Now, this bill is founded upon two allegations; first, that there was fraud used in obtaining the original decree of divorce, and that fraud, in substance, is alleged to consist in this, that her solicitor had in his employ, or in his office, a clerk, or a person, whom he trusted with the duty of keeping the watch of cases and notifying him as cases were reached and particularly with reference to this case, as it appears that the clerk was interested in the fees, he, according to his own testimony, having been one of those men that run around and hunt up divorce cases and accident cases for attorneys and share in the profits that the attorney may get out of the case; certainly a practice, if not disreputable, not to be commended to professional gentlemen.

That this party in his office had colluded with the attorney for the husband in this divorce case and had purposely kept her solicitor in ignorance of the time of trial. The evidence does not show collusion, so far as Mr. Murphy is concerned, but it does show bad faith on the part of this clerk; it shows

treachery on his part, and it shows conclusively to my mind, that by reason of his conduct, as shown by the evidence, the solicitor for this woman was not present in this court, nor was she present.

According to the testimony of her solicitor he never knew of this decree until after the term had expired at which the decree was entered, the decree being entered on the 8th of May and the term ending on the 23rd; that it was then too late to apply to this court for a rehearing, the term having expired.

The evidence satisfies me that this clerk knew of it; according to his own statement he knew of it within one or two days after the decree was entered. He did not inform, I believe, his employer, the solicitor of the defendant, of the entry of the decree until after the 23rd of May.

The obtaining of a default or of a decree or judgment by the non-appearance of the opposite party is one of the strongest cases of fraud found in the books as a ground for setting aside a judgment, if by contrivance, colluding or scheming, the opposite party is led to believe that his case is not to be heard when it is heard in his absence, and it affords good grounds for setting aside the advantage which the party obtains by the use of such scheming or fraud.

But, if this party were guilty of adultery, there would be little use in the court setting aside a decree and ordering a new trial in a case where it must result in the same decree.

Now, in order to obtain her relief against a decree thus obtained, she must show that a reasonable ground of defense—not that she is absolutely innocent, but that she has a reasonable ground for defense, a probable cause, and the court, in a proceeding of this kind, ought not to adjudicate whether she is guilty or not, but that she had such a case as entitled her to be heard and which might possibly result in a contrary decree or judgment to that which was obtained.

The evidence produced on the part of the husband which was *ex parte*, was sufficient to justify the entering of the original decree, but the main circumstances relied upon in that and which influenced the court in ordering that decree, was the circumstance testified to have taken place sometime in

November, about the 9th, of the husband going to the flat oc-
cupied by his wife with two men and finding this party, St.
John, in bed at the hour of eleven or twelve o'clock at night
in the wife's bedroom, which was positively sworn to. Mrs.
Jensen and St. John, upon their oaths, have denied that
any such thing ever occurred. These witnesses are not even
here to reaffirm their own testimony in that regard, and give
an opportunity to let the calcium light of cross examination
in upon their evidence. They are not produced here in court.
I think that that question as to whether that event ever took
place and which really formed the ground for the original
judgment or decree, ought to be left to a jury and I think I
will take the responsibility, as this case will be reopened, of
having a jury inquire into that fact. I have always found
that a jury that is drawn from the body of the people at large,
some from high life and some from low life, from all strata
of society, are really more competent to judge of questions of
credibility and especially of questions of fact of the nature
which have been developed in this case, than even a judge on
the bench, no matter how much experience he may have had.
I think she is entitled to a hearing before a jury of her coun-
trymen.

Of course, it is a serious thing to convict a woman of adult-
ery unheard, and where there is a reasonable doubt of the
matter, I think the court ought to give her an opportunity to
be heard, and particularly where there is very strong evi-
dence going to show that by the treachery of an employe of her
attorney this default was occasioned at the original hearing.

I have been troubled a good deal upon the question of ali-
mony in this case. Mrs. Jensen is not only charged with adult-
ery with St. John, of which she knew when this original bill
was filed, but she has continually since that time, even up to
the present day, given grave ground of suspicions by her con-
duct that that charge of adultery is true. She swears it is not
true; he swears it is not true. The jury will determine, but
I will allow no alimony to a woman whose husband is seeking
a divorce from her on the ground of adultery, who continues,

apparently, the illicit relation, or relations giving rise to grave suspicions that that charge of adultery is true.

There will be no alimony in this case from this on. Let the decree be prepared in accordance with the views expressed.